Filed 10/11/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of A.A. | |
| PUBLIC GUARDIAN OF SONOMA COUNTY, Petitioner and Respondent, v. A.A., Objector and Appellant. | A164854 (Sonoma County Super. Ct. No. SPR-096327) |

Objector A.A. appeals from an order granting the petition of respondent Public Guardian of Sonoma County (Public Guardian) to establish a Murphy conservatorship over his person under provisions of the Lanterman-Petris-Short Act (LPS Act, Welf. & Inst. Code, § 5000 et seq.) applicable to criminal defendants found to be incompetent.  Before A.A. was found to be incompetent, he pleaded guilty of the crime while he was represented by counsel, and the plea has not been challenged or set aside.  He contends that he did not meet the definition of "gravely disabled" under the statute because no formal probable cause hearing was ever held.  (*Id.*, § 5008, subd. (h)(1)(B)(ii).)  We disagree and affirm.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Because only a narrow legal question is presented in this appeal, we briefly summarize the proceedings below. After A.A. drove drunk and killed another driver in January 2020, he was charged with gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) and other offenses, along with various enhancements. A month after the incident, and while represented by counsel, he pleaded no contest to all charges. As part of the plea, he stipulated there was a factual basis for the plea based on a defense investigation. He also knowingly, intelligently, freely, and voluntarily waived his rights, and his appointed counsel joined in the waiver. The trial court then found him guilty, and a hearing was scheduled for mid-March to receive a report from the probation department. Proceedings were suspended, however, when A.A.'s counsel declared a doubt as to A.A.'s competency.

In April 2020, A.A. was found to be incompetent (Pen. Code, § 1370), and he was later committed to the state hospital in Napa. About a year after his commitment, the hospital's interim medical director submitted a report to the court indicating that there was no substantial likelihood A.A. would be restored to competency in the foreseeable future. The report recommended that conservatorship proceedings be initiated.

The Public Guardian sought what is known as a "Murphy conservatorship." A "Murphy conservatorship is a renewable one-year civil commitment for criminal defendants who are otherwise incompetent to stand trial for a felony involving death, great bodily harm, or a serious threat to the physical well-being of another, and who do not have the prospect of a restoration of competency." (*Conservatorship of Christopher B.* (2015)

240 Cal.App.4th 809, 811; see Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(ii).) A forensic psychiatrist evaluated A.A. and opined that he met the criteria for a Murphy conservatorship and recommended that he be placed in a secure facility for treatment. The Public Guardian in January 2022 filed a petition for such a conservatorship.

A court trial was held in March 2022. The forensic psychiatrist who had evaluated A.A. testified that A.A. had two mental disorders: substance-use disorder and schizophrenia. She opined that A.A. was incompetent to stand trial and that he was not restorable to competency because he had not improved despite getting multiple antipsychotic medications while being treated at the state hospital. A.A. invoked his Fifth Amendment rights and did not testify.

After the close of evidence, A.A.'s counsel argued that A.A. did not meet all the criteria for a Murphy conservatorship, including the requirement that there be a finding of probable cause. (See Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(ii).) The trial court rejected this argument, granted the petition, concluded that the least restrictive placement was a locked facility, and appointed the office of the public conservator as conservator of the person for a period of one year.

## II.
### DISCUSSION

A.A.'s sole argument on appeal is that his no-contest plea—which established his guilt beyond a reasonable doubt—was insufficient to meet the requirement of probable cause to support a Murphy conservatorship. We are not persuaded.

Murphy conservatorships were created as a legislative response to *In re Davis* (1973) 8 Cal.3d 798, which held that a criminal defendant who has been found to be incompetent to stand trial and for whom there is no

3

reasonable likelihood of a return to competency in the foreseeable future must either be released or subjected to commitment proceedings under the LPS Act. (*People v. Skeirik* (1991) 229 Cal.App.3d 444, 456, fn. 13.) The LPS Act at that time had no specific provision for defendants found incompetent to stand trial. (*Ibid.*) That meant that a defendant might qualify for a 90-day commitment under the statute but not meet the definition of "gravely disabled" necessary for a long-term commitment. (*Id.* at pp. 456–457, fn. 13.) A member of the Assembly named Frank Murphy, Jr., sponsored a 1974 amendment that added a second definition of "gravely disabled" to the LPS Act, making defendants eligible for the appointment of a conservator of the person because of a mental-health disorder (Welf. & Inst. Code, § 5350). (*Conservatorship of Christopher B.*, *supra*, 240 Cal.App.4th at p. 811; Parker, *California's New Scheme For The Commitment Of Individuals Found Incompetent To Stand Trial* (1975) 6 Pacific L.J. 484, 489.)

A.A. was found to be gravely disabled and thus eligible for a Murphy conservatorship under the provision that applies to defendants found incompetent (Pen. Code, § 1370) where four additional facts are proven. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) A.A. does not dispute that three of those facts were established: (1) he had been charged with a felony involving death, (2) as a result of a mental-health disorder, he was unable to understand the nature and purpose of the proceedings against him or to assist counsel in his defense, and (3) he represented a substantial danger of physical harm to others by reason of a mental disease, defect, or disorder. (*Id.*, subd. (h)(1)(B)(i), (iii), & (iv).)

A.A. challenges a fourth element of a Murphy conservatorship, which requires that "[t]here has been a finding of probable cause on a complaint pursuant to [Penal Code section 1368.1, subdivision (a)(2)], a preliminary

4

examination pursuant to [Penal Code section 859b], or a grand jury indictment, and the complaint, indictment, or information has not been dismissed." (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(ii).) According to A.A., he was never subject to any of the proceedings contemplated by the "express wording of the statute," because a plea "is nowhere enumerated in the statute." As was observed in the trial court, this case is in a "unique procedural posture for a Murphy Conservatorship." Such conservatorships were created to address situations where criminal defendants who "*ha[d] yet to be convicted of criminal conduct*" faced indefinite commitment if they were found incompetent to stand trial but were unlikely to be restored to competency in the foreseeable future. (*People v. Skeirik, supra,* 229 Cal.App.3d at p. 457, fn. 13, italics added.) The statute thus requires a showing that there is *at least* probable cause that the defendant committed a serious crime. Here, A.A.'s guilt was established following his plea, which provided far more than probable cause. As the trial court put it, "there's no way the court is not going to find probable cause when there's proof beyond a reasonable doubt."

A.A. insists that the statute contemplates the imposition of a Murphy conservatorship only after a formal proceeding involving the presentation of witnesses and other evidence. He complains that the protections of rights such as cross-examination and the evaluation of witness credibility, as contemplated by a formal procedure to establish probable cause, were not afforded to him. But a plea to charges *waives the right* to such protections. A.A.'s plea form specifically stated he understood he had a right to a preliminary examination where he would have had the right to confront witnesses and present evidence, and he indicated "I give up my right to a preliminary examination." At the time of the plea, A.A. was represented by

5

counsel who joined in the waiver. At no time, so far as we are aware, has the validity of the plea been challenged.

Our conclusion that no probable-cause hearing was required here is consistent with A.A.'s argument that the Legislature made "a deliberate and rational choice . . . to require a full blown, adversarial proceeding as a prerequisite to the imposition of a Murphy conservatorship." A.A. received such an adversarial hearing here. His counsel cross-examined the forensic psychiatrist and argued that the evidence did not establish he was a danger to others. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(iv).) But there was no need to hold an additional probable-cause hearing about the underlying charges in light of A.A.'s plea.

## III.
### DISPOSITION

The trial court's order is affirmed.

_____

Humes, P.J.


WE CONCUR:




_____

Margulies, J.




_____

Devine, J. *




     \*Judge of the Superior Court of the County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*Conservatorship of the Person of A.A.*  A164854

Trial Court:

Superior Court of the County of Sonoma

Trial Judge:

Hon. Lawrence E. Ornell

Counsel for Objector and Appellant:

Gerald J. Miller, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Robert H. Pittman, County Counsel, Sharmalee Rajakumaran, Deputy County Counsel, Public Guardian of Sonoma County

*Conservatorship of the Person of A.A.* A164854